MILLS, Judge.
Kirkland appeals from a conviction for first degree murder. He contends the trial court erred in denying his motion to suppress a transcribed statement made by him and in refusing to give his requested jury instruction on “unnecessary killing.” We affirm.
Prior to his trial, Kirkland, a minor, filed a motion to suppress all statements made by him to police officers on the day of his arrest, on the ground they were obtained in violation of his Fifth Amendment right to counsel. A hearing was conducted after which the court denied the motion. Subsequently, the court agreed to delete certain portions of Kirkland’s transcribed statement and to have the statement retyped with the excised remarks deleted before admitting the copy into evidence.
At the suppression hearing, Investigator E.R. Miller testified that on 8 April 1984 at 11:00 a.m., he and two fellow investigators contacted Kirkland at his place of employment. The officer advised Kirkland of his rights and asked if he knew why they were there. Kirkland responded, “I was with that girl Sunday night at Embers, but I did not go off with her.” Kirkland was then informed that his friend and companion the night of the murder was at the sheriff’s office being interviewed, to which he replied, “I danced with her, but I did not kill her.”
At this point, Miller suggested that Kirkland accompany him to the squad ear in order for them to talk further. After a lengthy incriminating statement was made, Kirkland was told he would be charged. The officers continued questioning him en-route to the jail. Kirkland answered the questions supplying more incriminating statements and never requested an attorney.
After arriving at the sheriff’s office, Kirkland signed a waiver of rights form and repeated the story given in the squad car for two assistant state attorneys. Following this, his father and two uncles arrived at the station and were allowed to speak with him. Afterwards, Kirkland advised the officers he wanted an attorney before giving a written statement. By this time, it was the lunch hour and the sher *1094 iff s office was unable to contact any lawyers immediately.
While a public defender was being sought, Kirkland remained alone in an office with Investigator Miller. Kirkland testified that he knew Miller from a previous encounter and trusted him. After a period of approximately one hour, he asked Miller whether he could personally write his statement on a piece of paper. Miller replied that he could not speak with Kirkland regarding the case unless he wanted to initiate the conversation. Kirkland repeated his question and Miller stated a stenographer would be required. Kirkland then asked whether he could give the statement just to Miller and the stenographer without his parents being present. The officer agreed and informed Kirkland’s father who made no objection.
At the beginning of the statement, Kirkland again waived his rights and admitted he had initiated the conversation. The statement ended when two assistant public defenders came into the office, and asked that the questioning be stopped.
Kirkland first contends he is entitled to a new trial based on the trial court’s denial of his motion to suppress the transcribed statement. As grounds therefor, he argues that his waiver of counsel should be found ineffective due to the failure of the police to make a diligent effort to contact an attorney and the fact that he was not informed of a public defender’s call allegedly made on his behalf during the course of the transcribed statement. From our review of the facts, as recited above, no error was committed by the police. Rather, every step possible was taken to afford Kirkland the full use of his constitutional rights.
The police, in the present case, made a good faith effort to locate counsel for Kirkland and cannot be held at fault simply because the noon hour prevented them from locating a lawyer immediately. Regarding the public defender’s call to the sheriff’s office, in the recent case of Haliburton v. State, 476 So.2d 192 (Fla.1985), the Florida Supreme Court stated that “the police do not have to obey a telephone order of an attorney to cease questioning a defendant, but do have to advise a defendant that an attorney retained on his behalf wishes to speak with him.” However, the court was also very careful to explain: “Our holding [a finding of reversible error] turns on the fact that the attorney retained by appellant’s sister on his behalf was in the station house requesting to speak with appellant. The failure of the police to convey this information to appellant violated his otherwise valid waiver.”
In Haliburton, the appellant was taken to a police station and questioned for several hours concerning his involvement in a burglary and first degree murder. During that time, an attorney arrived at the jail and was denied access to him. In fact, it was not until a second phone call was made by a judge to the chief of police, ordering the police to grant the attorney access, that the interrogation of the appellant actually ceased. Obviously, these are very extreme facts and different from those in the present case.
However, even if the holding in Ha-liburton were applicable to this case, a reversal would not be mandated because we find, as a matter of law, that the admission of Kirkland’s transcribed statement was harmless error. In other words, it is clear to this Court, beyond a reasonable doubt, that the jury would have returned a verdict of guilty even if the transcribed statement had not been before them. State v. DiGuilio, 10 FLW 430 (Fla.August 29, 1985).
In this appeal, Kirkland has not challenged the other inculpatory remarks he made prior to his transcribed confession, although both his statement in the squad car and that made after arriving at the police station were almost identical. In addition, Kirkland has not challenged the confession he made to his companion on the night of the murder or the evidence corroborating that testimony. It is well established that error affecting the constitutional rights of a defendant may be treated as harmless where, as here, there is over *1095 whelming evidence of guilt. Milton v. Wainwright, 407 U.S. 371, 372, 92 S.Ct. 2174, 2175, 33 L.Ed.2d 1 (1972).
We find the harmless error doctrine also applies to resolve Kirkland’s contention that it was error for the trial court to admit the transcribed statement into evidence with obvious excisions and to allow the jury to be informed that portions were deleted by court order.
As to Kirkland’s final contention, it is controlled by the fact that defense counsel argued in his opening statement the theory of self-defense would be asserted. In State v. Carrizalas, 356 So.2d 274 (Fla.1978), the Florida Supreme Court held a trial court is not required to instruct the jury on “unnecessary killing” pursuant to Section 782.11, Florida Statutes (1983), when the accused claims self-defense.
AFFIRMED.
SMITH and THOMPSON, JJ., concur.